| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1**<br><br>Jeffrey Kurtzman, Esquire (JK-7689)<br>**KURTZMAN \| STEADY, LLC**<br>2 Kings Highway West, Suite 102<br>Haddonfield, NJ 08033<br>kurtzman@kurtzmansteady.com<br>Telephone: (856) 428-1060<br><br>Attorneys for Debtor and Debtor-in-Possession | |
| In re:<br><br>SEMPER UTILITIES, LLC,<br><br>Debtor. | Case No. 22-11128<br><br>Chapter 11 |

### EMERGENCY MOTION OF DEBTOR AND DEBTOR-IN-POSSESSION FOR AN ORDER PURSUANT TO 11 U.S.C. §542 DIRECTING TURNOVER OF ESTATE PROPERTY

The motion of Semper Utilities, LLC (the Debtor"), as debtor and debtor-in-possession, by and through its undersigned proposed attorneys, hereby files its emergency motion for an order pursuant to 11 U.S.C. §542 directing the turnover of estate property, as more particularly described herein) and respectfully represents as follows:

### BACKGROUND

1. On February 11, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for reorganization pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Since the Petition Date, the Debtor has operated its business and managed its properties as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2.  This is the second Chapter 11 case involving the Debtor. On December 2, 2021, Chym IV Ventures, LLC ("Chym"), SZY Holdings, LLC (SZY" and, collectively with Chym, the "Lenders"), Edison Power Constructors, Inc. and TruConTra Power, LLC (collectively, with the Lenders, the Petitioning Creditors") filed an involuntary Chapter 11 petition against the Debtor in this Court (the "Involuntary Case")

3.  On January 12, 2022, this Court entered a consent order (the "Consent Order") dismissing the Involuntary Case. A copy of the Consent Order is annexed hereto and made a part hereof as Exhibit "A".

4.  Among other things, the Consent Order approved a forbearance agreement (the "Forbearance Agreement") between and among the Debtor and the Petitioning Creditors. A copy of the Forbearance Agreement is attached to the Consent Order.

5.  Pursuant to section 3.a. of the Forbearance Agreement, the Forbearance Agreement would terminate on June 15, 2022 unless earlier terminated as a result of a result of "Forbearance Default Event", "subject to notice and opportunity to cure such Default, as set forth herein," see, Forbearance Agreement, section 3.a.3. The parties understood, therefore, that the deadline for the satisfaction of the Debtor's obligations described in the Forbearance Agreement was June 15, 2022, roughly six months after the execution and delivery of the Forbearance Agreement and the dismissal of the Involuntary Case.

6.  Pursuant to section 15, of the Forbearance Agreements, the Debtor was afforded seventy-two (72) hours, or three days, to cure alleged defaults.

7.  Following this Court's entry of the Consent Order, the Debtor complied with the Forbearance Agreement by, among other things, providing the Lenders with access to the Debtor's vehicle GPS tracking system, making a payment to the Lenders in the amount of $100,000.00

during January, and working collaboratively with the Lenders to obtain payments from Exelon Corporation, the Debtor's largest customer, which had been delayed as a result of the Lender's exercise of remedies under the Uniform Commercial Code (the "UCC") prior to the commencement of the Involuntary Case.

8. The Debtor's sole member is Sotero Diaz. In connection with the Forbearance Agreement, Mr. Diaz collaterally pledged his membership interest in the Debtor (defined in the Forbearance Agreement as the "Semper Interest") to the Lenders to secure the Debtor's forbearance obligations.

9. Specifically, section 4.c. of the Forbearance Agreement provides as follows:

> The Semper Interest shall be deemed ***pledged*** to Lenders by virtue of this Agreement and Bankruptcy Court Order. In the absence of any certificates transferred to Lenders, the Bankruptcy Court Order shall deem such pledge to be perfected as if Lenders have possession of the certificates, whether or not they exist, evidencing the Semper Interest, without Lenders having to take any further action to perfect such interest. In an event of Default, and subject to notice and opportunity to cure such Default, as set forth herein, Lenders shall have the right, at any time, in Lender's discretion, after an event of Default (as defined herein) to transfer to or to register in the name of Lenders or any of Lender's nominees in any or all of the Semper Interest by simple written assignment.

Emphasis added.

10. The foregoing provision makes it clear that the Semper Interest was being pledged as security and would be released to Mr. Diaz upon the satisfaction of the Debtor's obligations. See, Forbearance Agreement, section 4.b., which provides that "[i]n the event of payoff of the Loan Obligations prior to or on the Forbearance Termination Date, Lenders shall transfer and/or endorse title and ownership of the Pledged Assets in or to Borrower.").

11. On February 1, 2022, the Petitioning Creditors, through their counsel, issued a letter purporting to notice the occurrence of defaults by the Debtor under the Forbearance Agreement. A copy of the letter is annexed hereto and made a part hereof as Exhibit "B".

12. The Debtor disputes that events of default had occurred or were continuing as of the date of the letter. However, by operation of section 15 of the Forbearance Agreement, the earliest date on which the Petitioning Creditors could have exercised their rights and remedies under the Forbearance Agreement was February 4, 2022, which was three days after the purported default notice.

13. On February 7, 2022, Michele M. Dudas, an attorney representing an entity known as CTPC Holdings Inc. ("CTPC") wrote to the undersigned counsel for the Debtor, stating, in relevant part, that CTPC was the "nominee and assignee of Chym" and that the Semper Interest had been assigned to CTPC on February 2, 2022, which she defined as the "Assignment Date". A copy of Ms. Dudas' letter is annexed hereto and made a part hereof as Exhibit "C".

14. That letter attached a document entitled Assignment and Transfer of Membership Interest dated February 2, 2022 (the "Assignment") and is signed by Gladys Salazar ("Salazar") on behalf of CTPC, Chad Friedman, Esquire ("Friedman"), purportedly on behalf of Mr. Diaz, and a representative of SZY. Notably, Mr. Diaz did not execute the Assignment in his own right.

15. In determining this motion, this Court will benefit from an understanding of the relationships among the parties to the Assignment. Salazar is the Debtor's former chief financial officer. The Debtor submits that Salazar engaged in the theft or embezzlement of substantial assets of the Debtor during and after her employment with the Debtor. Moreover, upon information and belief, Salazar is a business partner with Friedman in CTPC or other business ventures and has been working in concert with Friedman to appropriate the Debtor's business and assets. Friedman

is an attorney who is also the principal of Chym and who has actively (but unsuccessfully) solicited Mr. Diaz, both before and after the commencement of the Involuntary Case, to acquire the Debtor's business.

16. Viewed in retrospect, it is now clear that the Forbearance Agreement, rather than constituting a good faith vehicle for allowing the Debtor to restore its operations and customer relationships in the aftermath of the Involuntary Case, was instead a mechanism designed by the Lenders and their counsel to steal the Debtor's business and divest Mr. Diaz of ownership and operational control.

17. As such, the conduct of the Lenders and those who have abetted them in their efforts is unconscionable. In addition, and as set forth more particularly below, it is also illegal.

18. In the days following the Assignment, Salazar and CTPC sought to enter the Debtor's office facility, hacked the Debtor's computer systems, took possession of the Debtor's vehicle fleet, and contacted the Debtor's accounting firm, critical vendors, customers and prospective lenders. Salazar used armed security personnel in an effort to intimidate the Debtor's officers and employees in what can only be described as acts of thuggery. Salazar's message in all instances was that *she* was now acting for the Debtor and had full and exclusive operational authority to do so. While Salazar's efforts to invade the Debtor's office facility were thwarted by local police, she did in fact seize and remove critical vehicles and tools used by the Debtor in its operations. Upon information and belief, such assets are now in the possession of CTPC and/or Salazar.

19. Salazar's usurpation of the Debtor is evidenced by, in addition to Ms. Dudas' letter, the letter of Andrea Dobin, Esquire to Beverly Westle dated February 8, 2022, in which Ms. Dobin purports to represent the Debtor and asserts that Salazar has been installed as the Debtor's chief

executive officer. A copy of Ms. Dobin's letter is annexed hereto and made a part hereof as Exhibit "D".

20. The foregoing conduct by Salazar, Friedman and their various counsel rises to the level of wanton theft. While the Debtor intends to commence actions against each of those actors in due course, this Court should direct those parties having possession, custody and/or control of the Debtor's assets to turn over and deliver such assets to the Debtor immediately in order to permit the Debtor to reorganize consistent with the policy underlying Chapter 11.

## THE RELIEF REQUESTED AND THE REASONS THEREFOR

21. As a threshold matter, the purported assignment by Chym to CTPC of the Semper Interest constituted a breach of the Forbearance Agreement in that it violated the cure provision set forth in that instrument. First, the Debtor disputes that any events of default had occurred or were continuing under the Forbearance Agreement. Secondly, while the Forbearance Agreement afforded the Debtor three days to cure genuine defaults, Chym and CTPC jumped the gun by entering into the Assignment on February 2, 2022, one day after the issuance of the purported default notice, as evidenced by Ms. Dudas' letter and the Assignment itself.

22. Secondly, and as set forth above, it is clear from the Forbearance Agreement that Mr. Diaz's pledge of the Semper Interest was not an outright or unconditional conveyance of his membership interest in the Debtor. To the contrary, it was a collateral assignment to secure the Debtor's obligations under the Forbearance Agreement. As a result, the disposition of the Semper Interest was in all respects subject to the applicable provisions of the UCC dealing with the sale of *collateral*, as to which Messrs. Tabatchnik and Friedman and Ms. Dudas and Dobin, all of whom are sophisticated commercial lawyers, should be completely aware.

23. The UCC in New Jersey is codified at N.J.R.S. section 12A:1-101, *et seq*. Section 12A:9-610 sets forth a mechanism for the disposition of collateral after default and imposes the requirement that "[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable".

N.J.R.S. Section 12A:9-610(b).

24. In turn, section 12A:9-611 provides for a notification procedure with respect to the disposition of collateral by requiring that "a secured party that disposes of collateral under 12A:9-610 shall send to the persons specified in subsection (c) a reasonable authenticated notification of disposition."

N.J.R.S. 12A:9611(b).

25. Pursuant to section 12A:9-611(c), the parties on whom notice of disposition is required include the debtor and any secondary obligor of the debtor, which in this case includes Mr. Diaz.

25. Finally, section 12A:9-612 sets forth the requirements of the timeliness of the notification of the collateral disposition, which is a question of fact and as to which (in a commercial transaction) ten days is deemed to be a reasonable time before disposition.

26. Here, there was *no* notice given at any time to any required party with respect to the Assignment and the resulting alleged change in control of the Debtor. Indeed, nothing in the February 7, 2022 default notice refers to a disposition of collateral whatsoever. Nothing in the February 7, 2022 default notice establishes the terms of a public or private sale of the Semper Interest. Nothing in the February 7, 2022 default notice sets a date for the collateral disposition. As a result, the Assignment makes a mockery of the procedures established under the UCC by ignoring them completely.

27. To make matters even worse, in a conversation between the undersigned counsel for the Debtor and Friedman, Friedman admitted that Chym had assigned the Semper Interest to CTPC *for free*. In other words, Chym gave what it deemed to be a controlling interest to his business partner, Salazar, for no consideration whatsoever.

28. Under those facts, it would be impossible for this Court to determine that the Assignment was "commercially reasonable" or that it was anything other a sham by which to orchestrate a coup for the personal benefit of Friedman and Salazar.

29. Section 542 of the Bankruptcy Code provides that an entity (other than a custodian) in possession, custody or control of estate assets shall deliver to the debtor and account for such property or its value unless such property is of inconsequential value or benefit. Here, the assets converted by Salazar and her agents are extremely valuable, and without their use, the Debtor is and will remain unable to service its customer relationships and derive revenue therefrom.

30. Viewed in this light, the failure of the participants in this overt scheme to misappropriate the Debtor's enterprise value to pay even modest attention to the requirements of the UCC is shocking. The respondents' actions, all undertaken without judicial oversight or approval, sought to take advantage of the financial condition of the Debtor resulting directly from the Involuntary Case. This Court should not permit those actors to disregard applicable law and thereby benefit from their self-dealing.

## CONCLUSION

31. For the foregoing reasons, the relief requested in the motion should be granted in all respects.

WHEREFORE, Semper Utilities, LLC respectfully requests the entry of an order pursuant to 11 U.S.C. §542 granting the relief described herein, together with such other and further relief as is just and proper.

Dated: February 11, 2022                           KURTZMAN | STEADY, LLC


                                                   By:   /s/ Jeffrey Kurtzman.
                                                         Jeffrey Kurtzman, Esquire (JK-7689)
                                                         Proposed Attorneys for Debtor and
                                                         Debtor-in-Possession